222

TEG P. DAHLHEIMER, APPELLANT, V.
WILLIAM ANTHONY DAHLHEIMER, APPELLEE.
557 N.W.2d 719

Filed December 17, 1996.    No. A-96-293.

Richard A. Rowland and Philip G. Wright, of Quinn & Wright, for appellant.

Lloyd R. Bergantzel for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and IRWIN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Teg P. Dahlheimer appeals from the district court's order dissolving her marriage to William Anthony Dahlheimer. Teg alleges the district court erred in modifying the custody award and the property award previously granted by the district court in a decree of legal separation. Because we find that the decree of legal separation was a final, appealable order and that the district court erred in modifying the custody award and property award, we reverse the judgment of the district court.

## II. BACKGROUND

Teg and William were married on June 21, 1986. Two children were born during the marriage, namely, William George, born September 19, 1988, and Jacquelyn, born December 22, 1990.

On March 16, 1992, Teg filed a petition for legal separation. Teg requested the district court to enter an order granting her temporary and permanent custody of the parties' two minor children, dividing the personal property and debts of the parties, ordering William to pay child support and alimony, and granting "other and further relief" as the court might deem just and equitable. On April 3, William signed and filed a voluntary appearance, waiving the necessity of having process served upon him, reserving his right to file a responsive pleading within the statutory time, and acknowledging receipt of a copy of the petition. On August 3, a hearing was conducted on Teg's petition. William did not appear at the hearing and did not file any responsive pleadings other than the voluntary appearance.

On August 3, 1992, the district court entered a decree of legal separation. The court awarded custody of the children to Teg, divided the personal property and the debts of the parties, and ordered William to pay child support and alimony. In addition, the court awarded Teg "possession of the family home" and ordered William to "execute and deliver a Quitclaim Deed conveying his interest in the family home to [Teg]." On August 12, William executed a quitclaim deed. William did not appeal from the legal separation decree or file any other action to have the decree set aside.

On January 21, 1994, Teg filed an "Application to Modify Decree of Legal Separation." Teg requested that the legal separation decree "be modified and changed to a Decree of Dissolution." On February 23, William filed an answer admitting that the legal separation decree had been entered, but denying that the marriage was irretrievably broken and that the legal separation decree should be modified and changed to a dissolution decree. Additionally, William alleged that several provisions of the legal separation decree, including the division of property and the child support order, were unconscionable and should be modified. Finally, William alleged that he was not

represented by counsel at the time the legal separation decree was entered and that "certain items" of the legal separation decree were misrepresented to him or that he misunderstood them.

The court conducted a hearing on Teg's application on October 5, 1995. At the commencement of the hearing, William orally made a motion to amend his answer to include a request for custody of the children. The court allowed the amendment over Teg's objection.

On December 13, 1995, the district court entered a decree of dissolution. The court dissolved the marriage. The court found that "both parties are caring parents, but that it would be in the best interests of the children to give permanent physical custody . . . to [William]." The court also ordered Teg to pay child support. Additionally, the court ordered that neither party should receive alimony. Finally, the court found that "the Quit Claim Deed . . . signed by [William] is void and held for naught based on a finding that the document was executed to keep the family together and for possible reconciliation of the marriage" and awarded the family home to William.

On December 19, 1995, Teg filed a motion for new trial. An amended motion for new trial was filed on February 2, 1996. On February 9, the court held a hearing on the amended motion for new trial. On March 4, the court denied the new trial. This appeal timely followed.

### III. ASSIGNMENTS OF ERROR

On appeal, Teg assigns four errors, which we have consolidated for discussion to two. First, Teg asserts that the district court erred in modifying the legal separation decree and awarding custody of the children to William. Second, Teg asserts that the district court erred in modifying the legal separation decree and awarding William the family home.

### IV. STANDARD OF REVIEW

On questions of law, an appellate court has an obligation to reach its own independent conclusions, irrespective of the conclusion reached by the trial court. *Watts v. Watts*, 250 Neb. 38, 547 N.W.2d 466 (1996).

## V. ANALYSIS

### 1. LEGAL SEPARATION DECREE

The primary issue in the present case is what effect is to be given to the legal separation decree entered by the district court on August 3, 1992. The legal separation decree divided the property and debts of the parties, awarded custody of the children to Teg, ordered William to pay child support and alimony, and awarded the family home to Teg. On appeal to this court, as she did in the court below, Teg argues that the legal separation decree was a final, appealable order which resolved the issues of custody, support, and property distribution. Teg argues that because William failed to appeal from the legal separation decree, the district court should not have modified those aspects of the legal separation decree in the dissolution decree. William argues that the legal separation decree was only a temporary order and therefore that the district court was proper in resolving the custody, support, and property issues.

Neb. Rev. Stat. § 42-347 (Reissue 1993) defines "legal separation" as a decree providing that two persons who have been legally married shall live apart and "providing for any necessary adjustment of property, support, and custody rights between the parties but not dissolving the marriage." Neb. Rev. Stat. § 42-351 (Reissue 1993) gives the district court jurisdiction to render temporary and final orders as are appropriate concerning the custody and support of minor children, the support of either party, and the settlement of property rights of the parties.

The parties direct us to no cases, and our research reveals none, where the Nebraska Supreme Court has addressed whether the district court may disregard the terms of a legal separation decree when issuing a dissolution decree. The Supreme Court has, however, analogized legal separation decrees and dissolution decrees. In *Anderson v. Anderson*, 222 Neb. 212, 382 N.W.2d 620, 621 (1986), the Supreme Court stated that "we apply to this decree of legal separation the same standards as are applied for reviewing property divisions and alimony awards in decrees of dissolution."

In *Pendleton v. Pendleton*, 242 Neb. 675, 496 N.W.2d 499 (1993), the Nebraska Supreme Court was confronted with a sit-

uation somewhat similar to that in the present case. In *Pendleton*, the parties received a decree of legal separation which divided the marital property and, later, the parties received a dissolution decree. In the dissolution proceedings, the wife requested the district court to, inter alia, divide the marital property which had accrued after the entry of the separation decree. The district court denied the wife's request. On appeal, the *Pendleton* court recognized that a division of property in a separation case is as broad in scope as in an absolute divorce and that a district court has the power to adjust all the property rights of the parties when the evidence and circumstances require it. The *Pendleton* court went on to conclude that principles of res judicata do not bar a district court from dividing property in a dissolution action if the property was *not* distributed in the separation proceeding.

■ We conclude that a legal separation decree entered by the district court, under the authority of §§ 42-347 and 42-351, constitutes a final, appealable order. Such an order may include custody and support awards and property distributions just as a dissolution decree may. See, § 42-351; *Pendleton v. Pendleton, supra*; *Anderson v. Anderson, supra*. Accordingly, an aggrieved party must duly file a notice of appeal within 30 days of entry of the legal separation decree to challenge the provisions thereof. See, Neb. Rev. Stat. § 25-1912 (Cum. Supp. 1994); *Manske v. Manske*, 246 Neb. 314, 518 N.W.2d 144 (1994).

## 2. CUSTODY

Having concluded that a legal separation decree is a final, appealable order, we turn to Teg's assignment of error concerning the district court's award of custody of the minor children to William in the dissolution decree. Teg asserts that William should not have been allowed to amend his answer at the hearing to include his claim for custody of the children. Additionally, Teg asserts that William failed to demonstrate any changed circumstances from the time of the legal separation decree which would result in the best interests of the children being served by a change of custody.

· ■ Ordinarily, custody of minor children will not be modified unless there has been a material change of circumstances

showing that the custodial parent is unfit or that the best interests of the children require such action. *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996). The party seeking modification of child custody bears the burden of showing such a change in circumstances. *Id.* Because we analogize a legal separation decree with a dissolution decree, we conclude that the same principles govern changing custody of the minor children in a dissolution proceeding where a prior legal separation decree included a custody award. See *Anderson v. Anderson, supra.*

In the present case, the district court entered a legal separation decree on August 3, 1992, in which Teg was awarded custody of the parties' two minor children. Teg filed the application to modify the legal separation decree on January 21, 1994, alleging only that the decree should be modified to grant a dissolution rather than a legal separation. Teg did not raise the issue of modifying the custody award. William was allowed to raise the issue by amending his answer on the day of the hearing on Teg's application.

During the hearing on the motion for new trial, the district court stated that "there are some interesting aspects of law here in the sense that — and that I was really never confronted with it before, where there was a legal separation and in effect a modification to modify the legal separation into a divorce." The court continued, "[I]t was the Court's position, as evidenced by my ruling, that basically we were in a divorce action. I understand that we weren't maybe technically in that, but that's the way I looked at it. And, you know, obviously I could very well be wrong . . . ." Finally, the court further stated, "I did not approach it as a full blown custody determination in the decree of legal separation . . . ." We note that the judge at this hearing and at the hearing on Teg's application was *not* the same judge who issued the decree of legal separation.

As noted above, we conclude that the district court should have treated this proceeding for modification like a proceeding to modify a dissolution decree. However, it is apparent from the court's comments that the court treated the proceeding like an initial dissolution proceeding. As a result, the court failed to apply the correct principle of law, namely, that modification of

custody is proper only where there has been a material change of circumstances which would suggest that the custodial parent is an unfit parent or that the best interests of the children dictate changing custody. *Smith-Helstrom v. Yonker, supra.* In the present case, the burden to make such a showing was on William. See *id.*

Upon our review of the evidence in this case, it is apparent that William failed to sustain his burden. There is no evidence of *any* material change in circumstances from the time of the entry of the legal separation decree. Additionally, there is no evidence which would suggest either that Teg is an unfit mother or that the best interests of these children would be served by a change of custody. Indeed, the dissolution decree specifically stated that "both parties are caring parents." As such, the district court's judgment is reversed with regard to the custody of the minor children.

In light of our decision that Teg should receive custody of the two minor children, we also determine that Teg is entitled to receive child support rather than being obligated to pay support to William. According to the legal separation decree, William was ordered to pay $458 per month in child support. The child support award from the legal separation decree is to remain in effect.

### 3. FAMILY HOME

We next turn to Teg's assignment of error concerning the district court's award of the marital home to William. In the legal separation decree, William was ordered to execute a quitclaim deed to the property, which he did on August 12, 1992. The record further indicates that this deed has been filed with the register of deeds. The district court, in the dissolution decree, awarded the home to William and held that "the Quit Claim Deed . . . is found to be void and held for naught based on a finding that the document was executed to keep the family together and for possible reconciliation of the marriage."

We have already held that the legal separation decree was a final, appealable order. As such, William was entitled to file a notice of appeal from the decree within 30 days of its issuance if he wished to challenge the district court's order concerning

the home. See § 25-1912. Indeed, William was obligated to file such a notice if he wished to challenge the district court's order. See *id*. William did not file an appeal from the legal separation order, and he may not attack that order in the present case.

It is apparent that the district court treated the property distribution in much the same manner as it did the custody determination, as if the proceeding was one for dissolution rather than one for modification of the legal separation decree. Because the legal separation decree was a final, appealable order which distributed the property of the parties, the court erred in *re*-distributing the house. We are unable to find any legal authority for voiding a quitclaim deed because it was executed "to keep the family together and for possible reconciliation of the marriage." The judgment of the district court concerning the family home and the quitclaim deed is reversed, and the home is to remain in Teg's possession.

### VI. CONCLUSION

Because the district court erred in modifying custody of the children and in modifying the property distribution, we reverse the judgment of the district court.

REVERSED.