Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/29/2025 09:09 AM CDT

Kristine M. Benda, formerly known as
Kristine M. Sole, appellee, v.
Joshua S. Sole, appellant.

___ N.W.3d ___

Filed August 29, 2025.    No. S-24-751.

1. **Divorce: Appeal and Error.** In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.
2. **Questions of Law: Claim Preclusion: Issue Preclusion.** The applicability of claim and issue preclusion is a question of law.
3. **Jurisdiction: Appeal and Error.** An appellate court determines a jurisdictional question that does not involve a factual dispute as a matter of law.
4. **Judgments: Questions of Law: Appeal and Error.** On a question of law, an appellate court reaches a conclusion independent of the court below.
5. **Marriage: Jurisdiction.** The written certification described in Neb. Rev. Stat. § 42-361.01 (Reissue 2016) is not a jurisdictional requirement that, if not met, would prevent a court from having subject matter jurisdiction over separation proceedings held without an evidentiary hearing.
6. **Judgments: Jurisdiction: Appeal and Error.** Appellate courts apply the doctrine of void ab initio sparingly, and it is critical to differentiate between a judgment entered without jurisdiction and an erroneous judgment that may nevertheless be enforceable.
7. **Jurisdiction.** A lack of subject matter jurisdiction differs from an erroneous exercise of jurisdiction.
8. **Jurisdiction: Final Orders: Appeal and Error.** An appellate court lacks jurisdiction over the merits of a final, appealable order that was not timely appealed.
9. **Judgments: Final Orders: Collateral Attack.** When a judgment or final, appealable order is attacked in a way other than by a proceeding

in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack.

10. ____: ____: ____. Absent an explicit statutory or common-law procedure permitting otherwise, a judgment or final, appealable order may be collaterally attacked only when void ab initio.

11. **Marriage: Modification of Decree: Time: Appeal and Error.** Although a party may seek modification of the terms set forth in a separation decree as provided by statute upon a showing of a material change of circumstances, an aggrieved party must duly file a notice of appeal within 30 days of entry of the legal separation decree to challenge as unconscionable any order of custody, support, and property division set forth therein.

12. **Marriage: Final Orders: Appeal and Error.** A decree of legal separation is a final, appealable order.

13. **Marriage: Property Settlement Agreements: Final Orders: Time: Appeal and Error.** Once the court in a separation proceeding accepts the terms of a settlement agreement and incorporates them into the decree, ordering the parties to perform them, those terms become final after the time to appeal under Neb. Rev. Stat. § 25-1931 (Reissue 2016) has passed.

14. **Marriage: Statutes: Motions to Vacate: Time: Appeal and Error.** The terms of a separation agreement subsumed into a separation decree that was not timely appealed cannot be changed except through the procedures to modify as set forth by statute, through a timely motion to vacate under Neb. Rev. Stat. § 25-2001 (Reissue 2016), or under the court's inherent power to vacate or modify its own judgments during the term at which those judgments are pronounced.

15. **Marriage: Property Settlement Agreements: Modification of Decree: Proof.** Where parties to a separation proceeding voluntarily execute a property settlement agreement that is approved by the court and incorporated into a separation decree from which no appeal is taken, its provisions as to real and personal property and maintenance will not thereafter be vacated or modified in the absence of fraud or gross inequity, and its provisions relating to child custody, visitation, and support may be modified only upon a showing of a material change in circumstances affecting the best interests of the child.

16. **Marriage: Divorce.** In rendering a dissolution decree, a court is not prevented from making orders respecting matters of custody, support, and property, which were not decided in the prior legal separation decree.

17. **Judgments: Issue Preclusion.** Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate.

18. \_\_\_\_: \_\_\_\_. Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.

19. **Issue Preclusion.** Issue preclusion applies only to issues actually litigated.

Appeal from the District Court for Scotts Bluff County: Andrea D. Miller, Judge. Affirmed.

Sterling T. Huff for appellant.

Ryan M. Swaroff and Abbie L. DeWitte, of Rembolt Ludtke, L.L.P., for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Freudenberg, J.
## INTRODUCTION
The former husband appeals from a decree of dissolution. Two years before the dissolution proceedings, the district court entered a decree of legal separation, which incorporated the terms of the parties' settlement agreement governing property division, child custody and support, and alimony, and which the court expressly found was not unconscionable. The separation decree was not appealed. The dissolution decree incorporated the same terms, which the parties had stipulated the court should do. The parties also agreed the dissolution decree should increase the wife's equalization payment to compensate for an asset not previously disclosed by the husband. The husband argues on appeal that both decrees should be set aside and the property division, child custody and support, and alimony terms

relitigated. He claims the decree of separation was void ab initio because there was no certification by the parties under Neb. Rev. Stat. § 42-361.01(3)(b) (Reissue 2016) that "they shall thereafter live separate and apart." Alternatively, he asserts the dissolution decree violated the doctrine of issue preclusion. He argues the terms of the settlement agreements were unconscionable. We affirm.

## BACKGROUND

Joshua S. Sole (Joshua) and Kristine M. Benda, formerly known as Kristine M. Sole (Kristine), married in 2006. Their marriage produced two children: a son in 2013 and a daughter in 2016.

### DECREE OF LEGAL SEPARATION

On April 20, 2022, Kristine filed a complaint for legal separation from Joshua. The complaint alleged the marriage was irretrievably broken and prayed for legal separation, equitable division of property, and both temporary and permanent child custody, child support, and alimony orders.

When filing Kristine's complaint, her counsel also filed a voluntary appearance signed by Joshua, who was pro se, and a legal separation settlement agreement (LSSA) signed by Joshua and Kristine. The documents were notarized and dated April 14, 2022. The address provided for Joshua in his voluntary appearance was the same as that listed for both him and Kristine in Kristine's complaint.

The LSSA stated that it constituted "a full, final[,] and complete settlement of [Joshua's and Kristine's] rights" and addressed matters including custody, child support, alimony, the division of assets and debts, and "all other rights [that arose] by reason of the marital relationship." The LSSA also awarded parenting time to Joshua and an equalization payment to Kristine based on the division of their property.

In the LSSA, Joshua and Kristine agreed that they had made reasonable efforts to reconcile without success and that

their marriage was "irretrievably broken." The LSSA did not specify whether Joshua and Kristine had agreed to "thereafter live separate and apart."[1] Joshua and Kristine consented to the court's entry of a decree of legal separation that approved the terms of the LSSA without first holding a hearing.

On June 30, 2022, the district court entered a "Decree of Legal Separation" (Separation Decree) in which it granted Kristine legal separation from Joshua. In its Separation Decree, the court found that Joshua and Kristine had made "[r]eason-able efforts . . . to reconcile their marital difficulties" that were unsuccessful and had "agree[d] thereafter to live separate and apart." The court also found the LSSA to be "fair, reason-able[,] and not unconscionable" and "ordered [Joshua and Kristine] to comply with the terms of the [LSSA]." The court then set forth in the Separation Decree the terms of the LSSA in their entirety.

Joshua did not appeal the Separation Decree.

First Dissolution Decree

Approximately 6 months after the entry of the Separation Decree, on December 28, 2022, Kristine filed a complaint for dissolution. With the complaint, Kristine filed a second volun-tary appearance signed by Joshua, who was still pro se, and a dissolution settlement agreement (DSA) signed by Joshua and Kristine. The documents were notarized.

The DSA stated that Joshua and Kristine had submitted the agreement to the court "for the status of their marriage only" and that they "acknowledge[d] that all other issues ha[d] been resolved by [the Separation Decree]," including custody, child support, alimony, and the division of assets and debts. The DSA provided that all of the court's prior orders that were not in conflict with the DSA were to "remain in full force and effect."

About a month later, Kristine filed an amended version of the dissolution settlement agreement (Amended DSA) and

---

[1] See § 42-361.01(3)(b).

a joint affidavit (affidavit). Both agreements were notarized and signed by Joshua and Kristine. The Amended DSA only added a provision to restore Kristine's maiden name. In the affidavit, Joshua and Kristine requested that the court approve their settlement agreement, and they waived the required statutory hearing before the entry of the decree of dissolution. The affidavit stated that Joshua and Kristine's marriage was "irretrievably broken" and that they had (1) entered into a settlement agreement that resolved all issues in their case, (2) signed the agreement under oath, and (3) reviewed the agreement's property settlement and believed it was "fair and equitable." However, the affidavit incorrectly stated that more than 60 days had elapsed since Joshua's second voluntary appearance was filed.

Only 47 days after Kristine filed her complaint for dissolution and Joshua's second voluntary appearance, the district court entered a decree of dissolution (First Dissolution Decree). The court found that Joshua and Kristine's settlement agreement was "fair, reasonable[,] and not unconscionable" and ordered Joshua and Kristine to comply with its terms.

Months later, Kristine filed a complaint to modify the First Dissolution Decree. At that time, Kristine's counsel also filed (1) a third voluntary appearance signed by Joshua, who was still pro se, and (2) a stipulated agreement (Modification Agreement) signed by Joshua and Kristine. Both documents were notarized and dated June 28, 2023.

The complaint alleged that after the First Dissolution Decree was entered, Joshua discovered a retirement account he had failed to disclose to Kristine, so the account was not considered when calculating her equalization payment set forth in the Separation Decree. The complaint stated that Joshua and Kristine had agreed the retirement account changed the value of the equalization payment in the Separation Decree, so an order from the court was needed to effectuate that change. The Modification Agreement pertained solely to increasing Kristine's equalization payment.

The district court entered two orders addressing Kristine's equalization payment. The orders approved the Modification Agreement, stating that Kristine was entitled to an increased equalization payment and that "[a]ll of the orders not in conflict [t]herein [were to] remain in full force and effect."

## OPERATIVE DISSOLUTION DECREE

In 2024, Joshua retained counsel and moved to vacate the First Dissolution Decree, the equalization payment orders, and all complaints associated therewith. He also moved pursuant to Neb. Ct. R. Pldg. § 6-1112 to dismiss the Separation Decree. Lastly, Joshua provided notice that he was withdrawing from the LSSA, DSA, Amended DSA, affidavit, and Modification Agreement and moved to set aside and vacate those agreements.

Joshua alleged that the First Dissolution Decree was void ab initio because it was entered before the expiration of the waiting period set forth in Neb. Rev. Stat. § 42-363 (Reissue 2016), which requires that no suit for divorce may be heard or tried and no decree may be entered until 60 days after perfection of service of process. Kristine agreed that Joshua's motion to vacate the First Dissolution Decree was appropriate and that the decree was void. She moved for another decree of dissolution. She argued that the Separation Decree and the settlement agreements were still valid and had resolved all issues.

However, Joshua alleged that the Separation Decree was void for lack of subject matter jurisdiction because the record of the separation proceedings did not contain an affirmation by either party that they would thereafter live separate and apart, pursuant to § 42-361.01. Alternatively, if the Separation Decree was not void, he alleged it could not be modified to contain the increased equalization payment, "as the [Separation] Decree would have been a final order." Joshua's ultimate objective through the motion was to relitigate all issues surrounding support, custody, and property

division, returning the action to the court's "docket for discovery, progression, and trial."

Joshua subsequently served discovery requests on Kristine that sought information relating to child custody, child support, alimony, and property division. Kristine, who was represented by new counsel, objected to the requests on the grounds that they sought information irrelevant to the pending issues and pertained to issues already resolved by the settlement agreements. Following Kristine's objection, Joshua did not move the court to compel discovery.

During an evidentiary hearing on the motions, the court emphasized that the purpose of the hearing was not to relitigate the issues, but to address whether the settlement agreements should be vacated or set aside. Joshua testified at the evidentiary hearing that he did not believe the LSSA's terms or the Modification Agreement's increased equalization payment were fair and equitable. Joshua specifically took issue with the child support, alimony, custody, parenting time, and property settlement provided in the LSSA.

He testified that he had engaged in discussions with Kristine about their property division and family plan before entering into the LSSA. Kristine had emailed Joshua documents that provided her proposed terms for child custody, parenting time, property division, and other financial matters, which they discussed before ultimately reaching agreements on those issues. When Joshua received the documents, he had the opportunity to respond with his own valuations but did not do so. After the discussions, Kristine sent the documents to her counsel to draft the LSSA consistent with what she and Joshua had discussed. When Joshua was presented the LSSA and DSA, he knew that Kristine was represented by counsel but chose not to have an attorney represent him.

Joshua testified that when Kristine filed her complaint for legal separation, they were living at the same address, and that he intended to attempt to reunify with her, continue their marriage, and work things out after they legally separated.

Joshua testified that when he signed the LSSA and agreed to its terms, he was willing to do whatever it took to preserve his relationship with his family. He also testified that he read the LSSA before he signed it and, further, was given the opportunity to read all of the documents before he signed them.

For all the agreements between the parties, Joshua signed the notarized sections in which he affirmed he had read the agreement, knew its contents, and believed that the facts contained therein were true. In the LSSA, DSA, and Modification Agreement, Joshua certified that (1) he had entered into the agreements after receiving "ample opportunity" to consult separate counsel and (2) his consent to execute the agreements was not obtained by duress, fraud, or undue influence. The Modification Agreement also stated that Joshua (1) had voluntarily entered into the agreement "with full knowledge of the facts" and "full[y] inform[ed] as to [his] legal rights and liabilities" and (2) believed that the agreement was "reasonable under the circumstances."

Joshua testified that after the LSSA and DSA were executed, he realized that he had failed to disclose one of his retirement accounts to Kristine. He testified that he contacted Kristine to inform her of the account because he "felt like [it] was the right thing to do" and still hoped to reunify with her. He testified that he had thought that Kristine should share in that marital asset and agreed to increase her equalization payment.

At the hearing, Kristine's counsel offered exhibits 19 and 20 into evidence. Exhibit 19 was a picture of one of the documents that Kristine sent Joshua by email before their pre-LSSA discussions. The document provided Kristine's proposed terms for various financial matters, including child support, alimony, and the division of certain property and expenses. Before the exhibit was offered, Joshua testified that Kristine had sent him an email with her proposed division of their assets and that the email listed most of their high-value

items, such as their vehicles, and some of Kristine's gifts from her family.

When Kristine's counsel offered exhibit 19, Joshua's counsel objected, again stating that he had sent discovery requests and the exhibit was not disclosed to him. Joshua's counsel also objected on the grounds of foundation, relevance, and hearsay. Kristine's counsel asserted that (1) she had sent the exhibit before the hearing, (2) disclosure of the exhibit was not required at that point because Joshua had not filed a motion to compel discovery, and (3) the document was relevant because Joshua testified that it was used during his discussions with Kristine before the LSSA was drafted. Joshua's counsel argued that filing a motion to compel was unnecessary because Kristine's counsel should have complied with court rules and shared the exhibits before the hearing. The court overruled the objection and received exhibit 19, stating that if its receipt of the exhibit necessitated further evidence from Joshua's counsel at a later date, the court would schedule a time for him to present it. Joshua then testified he felt that Kristine's document provided "a reasonable estimate" for the marital assets that it listed.

Exhibit 20 was Kristine's counsel's attorney fee affidavit on the services she rendered. Joshua's counsel objected to the exhibit, again stating he was not sent the exhibit despite his discovery requests. He also argued that the exhibit did not satisfy the requirements for an attorney fee affidavit. The court ultimately received the exhibit.

Kristine did not offer exhibits 17 and 18 as evidence, and they are not contained in the appellate record.

After the evidentiary hearing, the district court entered an order addressing Joshua's and Kristine's motions. The court sustained Joshua's motion only as to vacating the First Dissolution Decree. The court noted that the decree was entered 47 days after Joshua's second voluntary appearance was filed, so the decree did not satisfy the 60-day waiting period set forth in § 42-363. Thus, the court concluded that

it had lacked jurisdiction to enter that decree and vacated it. It overruled the remainder of Joshua's motion.

The court sustained Kristine's motion to enter a second decree of dissolution. The court reasoned that because the statutory period had since expired, it had jurisdiction to enter another dissolution decree. The court stated that, accordingly, it did not need to decide whether the Separation Decree was enforceable and Joshua's motions to vacate that decree and the LSSA were "moot." The court stated it would incorporate the Amended DSA and the Modification Agreement into the new dissolution decree.

The court noted Joshua's admissions in the affidavit and found no evidence he was forced into the affidavit or coerced into signing it. The court also noted that Joshua knew he could hire an attorney, but chose not to, and that Joshua had access to relevant financial information when he signed the affidavit. The court found that the evidence showed Joshua and Kristine had discussed their property and children in written documents before signing the settlement agreements. The court emphasized that Joshua had "signed 5 separate documents [that] indicated that he believed the agreements were fair and reasonable [and] in the children's best interests." The court also stated that the DSA was "identical" to the LSSA, which Joshua had signed during his and Kristine's legal separation.

Based on the evidence, the court found that Joshua had voluntarily entered into the Amended DSA and the Modification Agreement and that there was no sufficient reason to vacate the agreements. The court found no evidence of fraud or gross inequity and noted that Joshua and Kristine had operated under their agreed-upon terms for over 2 years. The court stated that although the affidavit signed by the parties and submitted by Kristine's attorney incorrectly represented that 60 days had passed, the 60-day timeframe was "the only part of the affidavit waiving the final hearing which is incorrect," and that such error "[did] not and should not give [Joshua] a second opportunity to litigate [the] divorce."

The court found that all of the settlement agreements were "valid and resolve[d] all issues regarding child custody, child support, alimony, and the division of assets and debts" and that there were no outstanding issues in need of resolution. The court declined Kristine's request for attorney fees.

On October 1, 2024, the court entered a decree of dissolution (Operative Dissolution Decree), in which it stated that Joshua and Kristine had certified in writing that their marriage was "irretrievably broken." The court found that Joshua and Kristine's settlement agreements were "fair, reasonable[,] and not unconscionable" and bound Joshua and Kristine to their terms. The Operative Dissolution Decree restated the terms that were listed in the First Dissolution Decree and changed Kristine's equalization payment in accordance with the Modification Agreement.

Within 30 days of the Operative Dissolution Decree, Joshua filed his notice of appeal, which he stated included the decisions of the Separation Decree, the First Dissolution Decree, and the orders addressing Kristine's equalization payment.

## ASSIGNMENTS OF ERROR

Joshua assigns, consolidated and restated, that the district court erred by (1) not setting aside the Separation Decree for lack of jurisdiction and due to the allegedly unconscionable LSSA; (2) entering the Operative Dissolution Decree because it was barred by claim and issue preclusion by the Separation Decree; (3) failing to set aside and approving the allegedly unconscionable settlement agreements; and (4) receiving exhibits 17 through 20.

## STANDARD OF REVIEW

[1] In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.[2]

---

[2]  *Connolly v. Connolly*, 299 Neb. 103, 907 N.W.2d 693 (2018).

[2] The applicability of claim and issue preclusion is a question of law.[3]

[3] An appellate court determines a jurisdictional question that does not involve a factual dispute as a matter of law.[4]

[4] On a question of law, we reach a conclusion independent of the court below.[5]

## ANALYSIS

Joshua seeks to vacate the terms of his and Kristine's settlement agreement that was incorporated into the Separation Decree so he can litigate anew all matters of child custody and support, alimony, and property division. In an attempt to reach his desired result, Joshua argues the Separation Decree is void ab initio because neither party submitted a statement under oath or an affirmation that they shall thereafter live separate and apart, as described in § 42-361.01. In the alternative, Joshua argues the Operative Dissolution Decree was "void"[6] under claim preclusion because it "re-decide[d] all of the same issues"[7] of property division, child custody and support, and alimony decided in the Separation Decree 2 years earlier, albeit in a "virtually identical"[8] manner. He believes these arguments permit a reevaluation of the district court's explicit determination in the separation proceedings that the terms of child custody and support, alimony, and property division were conscionable. Joshua argues the terms were unconscionable, and the alleged errors in the court's alleged receipt of exhibits 17 through 20 are relevant to this analysis. We find no merit to Joshua's arguments.

---

[3] *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014).

[4] *Myers v. Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006).

[5] *Hara v. Reichert, supra* note 3.

[6] Brief for Appellant at 34.

[7] *Id*. at 20.

[8] *Id*. at 22, 23, and 34.

VOIDNESS AB INITIO

First, we hold that the Separation Decree is not void. The Separation Decree was entered 60 days or more after perfection of service of process, and the district court made a finding in the Separation Decree that the parties had agreed "thereafter to live separate and apart." We reject Joshua's premise that the parties' failure to include in the LSSA a written certification, as described by § 42-361.01(3)(b), to support the district court's finding, deprived the court of subject matter jurisdiction to enter a separation decree without first holding an evidentiary hearing.

Under Nebraska's marital dissolution, separation, annulment, custody, and support statutes,[9] "'[l]egal separation means a decree of a court of competent jurisdiction providing that two persons who have been legally married shall thereafter live separate and apart and providing for any necessary adjustment of property, support, and custody rights between the parties but not dissolving the marriage.'"[10] Section 42-361.01 provides, in relevant part, that in a legal separation proceeding:

(1) If both of the parties state under oath or affirmation that they shall thereafter live separate and apart, or one of the parties so states and the other does not deny it, the court, after hearing, shall make a finding whether the legal separation should be granted and if so may enter a decree of legal separation; [or]

(2) If one of the parties has denied under oath or affirmation that they will thereafter live separate and apart, the court shall, after hearing, consider all relevant factors, including the circumstances that gave rise to the filing of the complaint and the prospect of reconciliation, and shall make a finding whether the

---

[9] Neb. Rev. Stat. §§ 42-347 to 42-381 (Reissue 2016 & Cum. Supp. 2024). See, also, *Christine W. v. Trevor W.*, 303 Neb. 245, 928 N.W.2d 398 (2019).

[10] See *Connolly v. Connolly, supra* note 2, 299 Neb. at 109, 907 N.W.2d at 697.

legal separation should be granted and if so may enter a decree of legal separation.

Section § 42-356 provides that the hearings must be "held in open court upon the oral testimony of witnesses or upon the depositions of such witnesses taken as in other actions."

Section 42-361.01(3) offers an alternative to the required hearing, stating that a court may enter a decree of legal separation without first holding a hearing if (1) 60 or more days have passed since perfection of service of process and (2) both parties

> (a) . . . waive the requirement of the hearing and the court has sufficient basis to make a finding that it has subject matter jurisdiction over the legal separation proceeding and personal jurisdiction over both parties; and
>
> (b) . . . *have certified in writing that they shall thereafter live separate and apart* [and] that they have made every reasonable effort to effect reconciliation[;] all documents required by the court and by statute have been filed[;] and the parties have entered into a written agreement, signed by both parties under oath, resolving all issues presented by the pleadings in their legal separation proceeding.

(Emphasis supplied.)

We have analyzed similar requirements in the context of a dissolution proceeding. Section § 42-361 concerns a court's findings before entering a decree of dissolution and provides the same requirements and alternative to the required hearing as § 42-361.01, aside from requiring parties' affirmation or written certification that "the[ir] marriage is irretrievably broken" instead of that "they will thereafter live separate and apart."[11] Before the Legislature added a written certification alternative to § 42-361,[12] we held it was reversible error for the court to enter a decree of dissolution without a hearing

---

[11] See, § 42-361(1),(2), and (3)(b); § 42-361.01(1),(2), and (3)(b).

[12] See 2011 Neb. Laws, L.B. 669.

and solely based on the allegations in the pleadings that the marriage was irretrievably broken. We have never indicated such dissolution decrees were void ab initio and could therefore be collaterally attacked after the time for a direct appeal from the dissolution decree had run.

In *Wilson v. Wilson*,[13] on direct appeal, we reversed a decree of dissolution and remanded the cause after concluding that the district court erred by relying solely on the parties' sworn pleadings in finding that their marriage was irretrievably broken. Neither party appeared at the hearing on the matter, no evidence was submitted, and "no oral testimony was adduced, nor were any depositions introduced, in any of the various forms permitted by statute, including affidavits or written interrogatories."[14] The parties did not submit a sworn dissolution settlement agreement. The wife admitted in her verified pleading that the marriage was irretrievably broken but the husband did not. We said that to proceed with a "'trial'" on the petition and response alone, with the parties absent and no evidence, "constitutes error on the part of the trial court."[15]

In *Brunges v. Brunges*,[16] on direct appeal from a dissolution decree, we reversed, and remanded for an evidentiary hearing after concluding the district court erred by failing to hold a sufficient hearing, relying instead solely on statements by the parties in their pleadings asserting that the marriage was irretrievably broken. The district court based its determinations of property division, child and spousal support, and child custody on exhibits attached to the pleadings and the attorneys' arguments and oral representations of a stipulation between the parties. No witnesses testified, and no documentary or deposition evidence was received.

---

[13] *Wilson v. Wilson*, 238 Neb. 219, 469 N.W.2d 750 (1991).

[14] *Id.* at 221, 469 N.W.2d at 752.

[15] *Id*.

[16] *Brunges v. Brunges*, 255 Neb. 837, 587 N.W.2d 554 (1998).

We said the proceedings did not satisfy the requirements of § 42-356(1), which, at that time, required a hearing to be held. We said there was no "hearing" as defined by § 42-356, describing a hearing held "'in open court upon the oral testimony of witnesses or upon the depositions of such witnesses taken as in other actions.'"[17] Thus, the district court erred in finding the marriage irretrievably broken without receiving oral testimony or depositions, and the court's determinations as to the parties' property settlement, alimony, child support, visitation, and custody needed to be redetermined at the hearing on remand.[18]

After *Wilson* and *Brunges*, a written certification alternative was added to § 42-361. Subsequently, in *Kibler v. Kibler*,[19] we affirmed the district court's denial of a motion to vacate a decree of dissolution that was alleged to have violated the requirements of § 42-361. The parties admitted in their pleadings that their marriage was irretrievably broken, and, before a trial was held, they reached a settlement agreement, which was memorialized by the wife's counsel in a draft decree of dissolution.[20] The wife refused to sign and submit the draft decree to the district court, so the husband filed a motion to compel.[21] The evidence at the hearing showed that the wife did not want to sign the draft decree until after she received her property from the marital home.[22] The court signed and entered a copy of the draft decree that was unsigned by both parties, and neither party filed a direct appeal.[23] Later, the wife moved in district court to vacate the decree, arguing that the court lacked the authority to enter the decree because

---

[17] *Id.* at 844, 587 N.W.2d at 558 (quoting § 42-356).

[18] *Id.*

[19] *Kibler v. Kibler*, 287 Neb. 1027, 845 N.W.2d 585 (2014).

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

there was not a judicial finding or written stipulation between the parties that the marriage was irretrievably broken as required by § 42-361. The court overruled the wife's motion to vacate, and she appealed.

We stated that although the wife did not sign the decree, it was drafted by her attorney, and, at the hearing, neither the wife nor her attorney indicated she had changed her mind about the settlement.[24] Noting that the parties' pleadings admitted that the marriage was irretrievably broken, we cited our holdings in *Wilson* and *Brunges* that pleadings alone are insufficient for the court to make a finding that a marriage is irretrievably broken.[25] We observed that the district court was not relying on the pleadings alone.[26]

We also noted that the wife could have appealed the decree and did not, so the divorce had since become final.[27] Though the court had the power to vacate because it was still during the term in which the judgment was rendered,[28] we held that the interests of justice did not support vacating the decree and concluded that the district court did not abuse its discretion in overruling the wife's motion.[29]

[5] In line with our decision in *Kibler*, we hold that the written certification described in § 42-361.01 is not a jurisdictional requirement that, if not met, would prevent a court from having subject matter jurisdiction over separation proceedings held without an evidentiary hearing. We find unavailing Joshua's attempts to analogize the certification under § 42-361.01 to the required statutory 60-day waiting period for dissolution in § 42-363. Section 42-363 provides that "[n]o suit for divorce shall be heard or tried until sixty days

---

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] See Neb. Rev. Stat. § 25-2001 (Reissue 2016).

[29] *Kibler v. Kibler, supra* note 19.

after perfection of service of process, at which time the suit may be heard or tried and a decree may be entered." We have held that this 60-day waiting period for obtaining a divorce is a jurisdictional requirement such that a decree entered prematurely is null and void and either party may raise the jurisdictional defect at any time.[30] But the language of § 42-363 is meaningfully different from the language of § 42-361 addressed in *Kibler*, and it is likewise meaningfully different from the language of § 42-361.01(3)(b).

[6,7] We apply the doctrine of void ab initio sparingly,[31] and it is critical to differentiate between a judgment entered without jurisdiction and an erroneous judgment that may nevertheless be enforceable.[32] A lack of subject matter jurisdiction differs from an erroneous exercise of jurisdiction.[33]

> "'[T]here is a wide difference between a want of jurisdiction, in which case the court has no power to adjudicate at all, and a mistake in the exercise of undoubted jurisdiction, in which case the action of the trial court is not void although it may be subject to direct attack on appeal. . . .'"[34]

This is not one of the limited scenarios where the void ab initio doctrine applies. The district court had the power to enter the Separation Decree that incorporated the terms of the LSSA, and it is not void.

### Finality and Preclusion

[8] The Separation Decree was not timely appealed. We lack jurisdiction over the merits of a final, appealable

---

[30] See *Wymore v. Wymore*, 239 Neb. 940, 479 N.W.2d 778 (1992) (citing *Garrett v. State*, 118 Neb. 373, 224 N.W. 860 (1929)).

[31] See *State v. Bartel*, 308 Neb. 169, 953 N.W.2d 224 (2021).

[32] *Parish v. Parish*, 314 Neb. 370, 991 N.W.2d 1 (2023).

[33] *Id*.

[34] *Id.* at 379, 991 N.W.2d at 8 (quoting *Foster v. Foster*, 509 Mich. 109, 983 N.W.2d 373 (2022)).

order that was not timely appealed.[35] Under Neb. Rev. Stat. § 25-1931 (Reissue 2016), proceedings for reversing, vacating, or modifying judgments or final orders shall be commenced within 30 days after the making of the final order complained of.

[9,10] When a judgment or final, appealable order is attacked in a way other than by a proceeding in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack.[36] Absent an explicit statutory or common-law procedure permitting otherwise, a judgment or final, appealable order may be collaterally attacked only when void ab initio.[37]

[11] We find that Joshua's appeal of the property, custody, and support provisions that were set forth in the Separation Decree and reiterated in the Operative Dissolution Decree is an impermissible collateral attack. Apposite to the case at bar is *Dahlheimer v. Dahlheimer*.[38] Therein, the Nebraska Court of Appeals held that although a party may seek modification of the terms set forth in a legal separation decree as provided by statute upon a showing of a material change of circumstances, an aggrieved party must duly file a notice of appeal within 30 days of entry of the decree to challenge as unconscionable any order of custody, support, and property division set forth therein. Proceedings to modify the separation decree to a dissolution decree do not reopen the terms of property division, child custody and support, and alimony set forth in the separation decree that was not timely appealed.

The separation decree in *Dahlheimer* included an award of child custody, property division, child support, and alimony.

---

[35] See, e.g., *Seid v. Seid*, 310 Neb. 626, 967 N.W.2d 253 (2021); *Tilson v. Tilson*, 299 Neb. 64, 907 N.W.2d 31 (2018); *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997).

[36] See *Becher v. Becher*, 311 Neb. 1, 970 N.W.2d 472 (2022).

[37] See *id*. See, also, *Parish v. Parish, supra* note 32; *State v. Jones*, 318 Neb. 840, 19 N.W.3d 499 (2025); *Seid v. Seid, supra* note 35.

[38] *Dahlheimer v. Dahlheimer*, 5 Neb. App. 222, 557 N.W.2d 719 (1996).

The husband did not timely appeal the decree or file any other action to have the decree set aside. Approximately 1½ years later, the wife filed an application to modify the separation decree to a dissolution decree. The husband responded by alleging that several provisions of the separation decree, including the division of property and the child support order, were unconscionable and should be modified, noting, among other things, that he was not represented by counsel at the time the separation decree was entered.

[12] The Court of Appeals held that the district court erred in the dissolution proceedings by changing the child custody and property division terms of the separation decree "as if the proceeding was one for dissolution rather than one for modification of the legal separation decree"[39] and when there was no evidence of any material change of circumstances from the time of the separation decree. The Court of Appeals explained that a decree of legal separation is a final, appealable order.[40] And, by statute, the court in entering a separation decree may provide for final orders concerning the custody and support of minor children, the support of either party, and the settlement of property rights. Such final orders, reasoned the court, cannot be collaterally attacked or undone through the later modification of the separation decree to a dissolution decree.[41]

The Court of Appeals distinguished the facts before it from those addressed in *Pendleton v. Pendleton*,[42] wherein we held that principles of res judicata did not bar the court from dividing, in a dissolution proceeding, property that had accrued after the entry of the separation decree and that had not been distributed in the separation proceeding. The Court of Appeals

---

[39] *Id.* at 229, 557 N.W.2d at 724.

[40] See *id.* See, also, *Anderson v. Anderson*, 222 Neb. 212, 382 N.W.2d 620 (1986).

[41] See *id.*

[42] *Pendleton v. Pendleton*, 242 Neb. 675, 496 N.W.2d 499 (1993). See, also, *Connolly v. Connolly, supra* note 2.

also relied on our statement in *Anderson v. Anderson*[43] that "'we apply to this decree of legal separation the same standards as are applied for reviewing property divisions and alimony awards in decrees of dissolution.'"[44]

We agree with the Court of Appeals' analysis in *Dahlheimer*. Section 42-351(1) provides the district court with jurisdiction in proceedings, including in legal separation, to render judgment and make orders "both temporary and final" concerning, among other things, child custody and support, spousal support, and property settlement.[45] Section 42-364.17 requires that the court, in "[a] decree of dissolution, legal separation, or order establishing paternity shall incorporate financial arrangements for each party's responsibility for reasonable and necessary medical, dental, and eye care, medical reimbursements, day care, extracurricular activity, education, and other extraordinary expenses of the child and calculation of child support obligations."

Section 42-366(1) states that in either legal separation or dissolution of marriage, the parties may enter into written settlement agreements containing provisions for property disposition, maintenance of either party, and support and custody of minor children. Under § 42-366(2), such agreements, except for terms for support and custody of minor children, are binding on the court considering them unless it finds the agreement unconscionable.

In the absence of such a finding of unconscionability, the terms of the settlement agreement "may be set forth in the decree of dissolution or legal separation and the parties shall be ordered to perform them"[46] and the terms of the agreement set forth in the separation or dissolution decree "may be

---

[43] *Anderson v. Anderson, supra* note 40.

[44] *Dahlheimer v. Dahlheimer, supra* note 38, 5 Neb. App. at 225, 557 N.W.2d at 722 (quoting *Anderson v. Anderson, supra* note 40).

[45] See, also, §§ 42-357 and 42-368.

[46] § 42-366(4).

enforced by all remedies available for the enforcement of a judgment, including contempt."[47]

We have recognized in the dissolution context that once a court adopts a property settlement agreement and sets it forth as a judgment of the court, or incorporates it into a dissolution decree, "the contractual character of the . . . agreement is subsumed into the court-ordered judgment."[48] Under our reasoning in *Anderson* that "we apply to [a] decree of legal separation the same standards as are applied for . . . decrees of dissolution,"[49] a settlement agreement that is incorporated into a separation decree is likewise subsumed into the order.

In applying § 42-366, we have generally held that if the terms of a property settlement agreement with respect to real and personal property and maintenance are not found unconscionable, the agreement is binding upon the court and the initial decree must carry such agreement into effect.[50]

Section 42-364 refers to "an action under Chapter 42 involving child support, child custody, parenting time, visitation, or other access," which includes both separation proceedings and dissolution proceedings. It sets forth requirements for such determinations and also states that modification of said custody or support "shall be commenced by filing a complaint to modify."[51]

[13] Considering all applicable statutory provisions in pari materia, it is clear that once the court in a separation proceeding accepts the terms of a settlement agreement and

---

[47] § 42-366(5).

[48] See *Rice v. Webb*, 287 Neb. 712, 723, 844 N.W.2d 290, 298 (2014). See, also, *Gomez v. Gomez*, 303 Neb. 539, 930 N.W.2d 515 (2019); *Ryder v. Ryder*, 290 Neb. 648, 861 N.W.2d 449 (2015).

[49] *Anderson v. Anderson, supra* note 40, 222 Neb. at 212, 382 N.W.2d at 621.

[50] See *Windham v. Kroll*, 307 Neb. 947, 951 N.W.2d 744 (2020) (citing *Reinsch v. Reinsch*, 259 Neb. 564, 611 N.W.2d 86 (2000)). See, also, *Ryder v. Ryder, supra* note 48.

[51] § 42-364(6). See, also, § 42-368.

incorporates them into the decree, ordering the parties to perform them, those terms become final after the time to appeal under § 25-1931 has passed. They cannot thereafter be collaterally attacked.

[14-16] The terms of a settlement agreement subsumed into a separation decree that was not timely appealed cannot be changed except through the procedures to modify as set forth by statute, through a timely motion to vacate under § 25-2001, or under the court's inherent power to vacate or modify its own judgments during the term at which those judgments are pronounced. [52] Thus, where parties to a separation proceeding voluntarily execute a property settlement agreement that is approved by the court and incorporated into a separation decree from which no appeal is taken, its provisions as to real and personal property and maintenance will not thereafter be vacated or modified in the absence of fraud or gross inequity, [53] and its provisions relating to child custody, visitation, and support may be modified only upon a showing of a material change in circumstances affecting the best interests of the child. [54] In rendering a dissolution decree, a court is not, however, prevented from making orders respecting matters of custody, support, and property, which were not decided in the prior separation decree. [55]

[17-19] This is consistent with the principles of issue preclusion. Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate. [56] Issue preclusion applies where (1) an

---

[52] See *Kibler v. Kibler, supra* note 19.

[53] See, *Carlson v. Carlson*, 299 Neb. 526, 909 N.W.2d 351 (2018) (citing *Ryder v. Ryder, supra* note 48). See, also, *Rice v. Webb, supra* note 48.

[54] See *Windham v. Kroll, supra* note 50 (citing *Tilson v. Tilson, supra* note 35, and *State on behalf of Fernando L. v. Rogelio L.*, 299 Neb. 329, 907 N.W.2d 920 (2018)).

[55] See, *id.*; *Connolly v. Connolly, supra* note 2; *Pendleton v. Pendleton, supra* note 42.

[56] *Hara v. Reichert, supra* note 3.

identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.[57] Issue preclusion applies only to issues actually litigated.[58]

Joshua correctly asserts that issue preclusion from the Separation Decree applies in this case. During Joshua and Kristine's legal separation proceedings, the district court found that the LSSA was not unconscionable and subsequently incorporated its terms into the Separation Decree, ordering Joshua and Kristine to adhere to them. Joshua did not move to modify for a material change of circumstances or on the grounds of fraud or gross inequity. Nor did he file a motion to vacate under § 25-2001 or under the court's inherent power to vacate or modify its own judgments during the term at which those judgments were pronounced. Joshua also does not argue on appeal that fraud or gross inequity or a material change in circumstances affecting the children's best interests warranted modification of the Separation Decree's terms.

The terms of the LSSA that were incorporated into the Separation Decree had a preclusive effect on the Operative Dissolution Decree. That preclusive effect included the district court's explicit determination that the provisions of the LSSA were not unconscionable.

Joshua is mistaken that the Operative Dissolution Decree violated the doctrine of issue preclusion. This is because the custody, support, and property division set forth in the Separation Decree were not relitigated in the dissolution proceedings. The court's act of restating the Separation Decree's

---

[57] *Id.*

[58] *Id.*

terms in the dissolution decree did not equate to it relitigating those issues for purposes of issue preclusion.

As Joshua points out, the Operative Dissolution Decree has "virtually identical" provisions to the Separation Decree.[59] The only exception as pertains to the matters at issue is the modification of the equalization payment to account for the previously undisclosed retirement account. As discussed, it was permissible for the court to address a matter not decided under the Separation Decree.

Although the district court determined it did not need to decide whether the Separation Decree was enforceable, the court, in an abundance of caution, found that all of the settlement agreements were "valid and resolve[d] all issues regarding child custody, child support, alimony, and the division of assets and debts," which in effect honored the terms of the LSSA that were incorporated into the Separation Decree. Though unnecessary, the court's additional review of the LSSA's conscionability could only have benefited Joshua, who would have otherwise needed to overcome the burdens of showing fraud or gross inequity[60] or a material change in circumstances affecting his children's best interests[61] to undo the terms incorporated into the decree. Ultimately, it appears that the district court in the Operative Dissolution Decree simply restated the previously ordered terms in the Separation Decree for ease of reference. It then added the matters not decided in the Separation Decree, which included restoring Kristine's maiden name and incorporating the Modification Agreement's change to Kristine's

---

[59] See brief for appellant at 22, 23, and 34.

[60] See *Carlson v. Carlson, supra* note 53 (citing *Ryder v. Ryder, supra* note 48). See, also, *Rice v. Webb, supra* note 48.

[61] See *Windham v. Kroll, supra* note 50 (citing *Tilson v. Tilson, supra* note 35, and *State on behalf of Fernando L. v. Rogelio L., supra* note 54).

equalization payment. In so doing, the district court did not violate the principles of issue preclusion.

## Unconscionability of Modification Agreement

The only matter pertaining to property division, child custody and support, and alimony that is properly before us in this appeal is the modification of the equalization payment incorporated into the Operative Dissolution Decree—assuming without deciding that Joshua specifically assigned and argued this issue on appeal. We find that the court did not abuse its discretion in determining that the equalization payment pursuant to the Modification Agreement was not unconscionable. The Modification Agreement pertained solely to increasing Kristine's payment to compensate for Joshua's undisclosed retirement account. Joshua testified that he voluntarily contacted Kristine to inform her of the undisclosed account upon its discovery because he "felt like [it] was the right thing to do" and still hoped to reunify with her. He also testified that he had thought Kristine should share in that marital asset and agreed to increase her equalization payment. In the Modification Agreement, Joshua affirmed that he (1) had voluntarily entered into the agreement "with full knowledge of the facts" and "full[y] inform[ed] as to [his] legal rights and liabilities" and (2) believed that the agreement was "reasonable under the circumstances."

Joshua's arguments on appeal pointing to the alleged misrepresentations by Kristine's counsel in the affidavit, which incorrectly stated 60 days had passed in relation to the First Dissolution Decree, are not particularly relevant to our analysis of whether the agreement to modify the equalization payment was unconscionable. And the admission of exhibits 19 and 20 has no bearing on any of the issues properly before us. We find the court did not abuse its discretion in determining the Modification Agreement was not unconscionable and incorporating it into the Operative Dissolution Decree.

## CONCLUSION

We conclude that the Separation Decree is not void and that the Operative Dissolution Decree is a valid decree that effectively reiterated the terms of Joshua and Kristine's first settlement agreement, which had been incorporated into the Separation Decree. Further, the district court did not abuse its discretion by approving as conscionable and incorporating into the Operative Dissolution Decree the Modification Agreement's equalization provision that accounted for the undisclosed retirement account. Thus, we affirm the judgment of the district court.

Affirmed.