IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

HOHENSTEIN V. VIDAL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KURT A. HOHENSTEIN, APPELLANT,

V.

CHRISTINE VIDAL, FORMERLY KNOWN AS CHRISTINE FULFORD, AND CATHERINE MERTES, INDIVIDUALLY AND AS BENEFICIARIES OF THE HOHENSTEIN FAMILY TRUST, AND JILL HOHENSTEIN AND VICKI HOHENSTEIN, INDIVIDUALLY AND AS CO-TRUSTEES OF THE HOHENSTEIN FAMILY TRUST, APPELLEES.

Filed May 19, 2026.    No. A-25-441.

Appeal from the District Court for Dakota County: BRYAN C. MEISMER, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Kurt A. Hohenstein, pro se.

Andrew T. Schlosser and Susan J. Spahn, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., for appellees.

MOORE, PIRTLE, and FREEMAN, Judges.

MOORE, Judge.

## I. INTRODUCTION

Kurt Hohenstein, representing himself, appeals from the orders of the district court for Dakota County, which denied his request to disqualify the judge in this case and granted the defendants' motion to dismiss his complaint and to impose sanctions on him. On appeal, Kurt assigns that the court erred in dismissing his complaint with prejudice, denying his motion to disqualify, and sanctioning him as a vexatious litigant. For the reasons set forth herein, we affirm in part, and in part reverse and remand for further proceedings.

- 1 -

## II. STATEMENT OF FACTS

The present case, which was initiated in July 2024, is the most recent in a series of cases relating to an ongoing family dispute concerning ownership interests in and the operation of the family farm, incorporated as Cottonwood Flats, Inc. (Cottonwood Flats). We have recounted portions of the facts of this dispute and the procedural history in three previous appeals from the underlying litigation, as well as in the appeals in two of the related cases. See *Hohenstein v. Hohenstein*, No. A-22-108, 2023 WL 5217713 (Neb. App. Aug. 15, 2023) (selected for posting to court website) (*Hohenstein I*) (appeal from final order in underlying litigation). See, also, *Hohenstein v. Hohenstein*, No. A-22-278, 2023 WL 5919731 (Neb. App. Sept. 12, 2023) (selected for posting to court website) (*Hohenstein II*) (tort case); *Hohenstein v. Hohenstein*, No. A-23-1057, 2024 WL 4601638 (Neb. App. Oct. 29, 2024) (selected for posting to court website) (*Hohenstein III*) (appeal concerning attorney fee allocation after remand in underlying litigation); *Cottonwood Flats v. Hohenstein*, No. A-24-526, 2025 WL 1565077 (Neb. App. June 3, 2025) (selected for posting to court website) (*Hohenstein IV*) (eviction case); and *Hohenstein v. Hohenstein*, No. A-24-798, 2025 WL 2972225 (Neb. App. Oct. 21, 2025) (selected for posting to court website) (*Hohenstein V*) (appeal concerning postjudgment enforcement in underlying litigation).

Here, we have summarized the facts of the underlying litigation necessary to provide context for the appeal in the present case, including Kurt's assertions regarding a 2011 agreement between Kurt and one of his siblings that was not adjudicated in the underlying litigation but is directly related to Kurt's claims in the present case. We have also summarized filings from two other related cases that were admitted at the hearing on the defendants' motion to dismiss in the present case.

### 1. UNDERLYING LITIGATION AND RELATED INFORMATION

#### (a) Cottonwood Flats Stock

William Hohenstein and Lillian Hohenstein had five children, including Kurt and his sister, Sarah Mertes. William died in 2001, and Sarah died in 2011 before the underlying litigation was initiated. William and Lillian initially owned all stock in Cottonwood Flats, incorporated in 1976, but they made certain gifts of stock to their children over the years. As of 1995, Kurt and his siblings each owned 62.6 shares of stock.

In 1994, as part of their estate planning, William and Lillian executed separate revocable trusts, and they each transferred their shares of Cottonwood Flats stock into their respective trusts, which we have referred to in prior appeals as William's Trust and Lillian's Trust. Upon William's death, his trust terminated and the Hohenstein Family Trust (the Family Trust) was established. The 296 shares of Cottonwood Flats stock held in William's Trust at that time were transferred to the Family Trust.

In 1994, William and Lillian also entered into an agreement (the 1994 agreement) with Kurt, granting him an option to purchase the stock of Cottonwood Flats. The 1994 agreement provided that the parties to the agreement would establish the price for the purchase and allowed for increases or decreases in the price based on annual valuations. The initial purchase price of Cottonwood Flats under the 1994 agreement was $1,290,000, which William and Lillian believed was its value at the time; changes in that price were reflected in annual attachments to the

agreement, which maintained the same purchase price for the corporation from 1994 through 2003. The value was reduced in 2004 to $1,103,400 for reasons not important here, and that value was reaffirmed in annual attachments through 2010. We note that language was added to the attachment documents in 1999 stating that the valuation was presumed to be the fair market value of the corporation's assets. Language added in 2009 stated that the 1994 agreement "permanently establishes the value of said stock at the value determined herein."

Lillan, Kurt, the Family Trust, Lillian's Trust, and Cottonwood Flats entered into another stock purchase agreement, dated in 2002 (the 2002 agreement). The 2002 agreement set out additional terms regarding the 1994 agreement, including a provision that the valuation of the shares in the corporation be fixed and remain the same without regard to the actual or fair value of the shares.

Cottonwood Flats, the Family Trust, Lillian's Trust, and Kurt entered into an agreement to purchase corporate stock, dated June 25, 2010 (the 2010 agreement). Among other things, the 2010 agreement stated that Kurt was agreeing to purchase "62.6 shares" from each of his siblings, and it provided for a "final total purchase price" to Kurt's siblings of $72,372.58 each.

(b) Information About Kurt's 2011 Agreement With Sarah

Kurt's complaint in the current case includes allegations about his 2011 agreement for the purchase of Cottonwood Flats stock from Sarah. We briefly describe those allegations at this point in our opinion to provide chronological context.

Kurt generally alleged that in 2008, Sarah and her husband Jack Mertes, through counsel, approached the shareholders of Cottonwood Flats, seeking to negotiate the sale of Sarah's shares, including the shares of stock in the Family Trust in which Sarah had a beneficiary interest.

Kurt attached several documents to his complaint, including a document entitled "AGREEMENT TO PURCHASE CORPORATE STOCK OF SHAREHOLDERS," between Sarah "Stockholder of 62.6 shares" and Cottonwood Flats as sellers and Kurt as buyer. The document is signed by Lillian as president of Cottonwood Flats and "Jack D. Mertes for Sarah L. Mertes" "(POA)." The document was also signed by Kurt as "Buyer." Jack's signature is dated "June 24[,] 2011." Lillian's and Kurt's signatures are not dated. All three signatures were notarized (Lillian's and Kurt's were notarized in July 2010; Jack's was notarized in June 2011). We have referred to this document herein as "the 2011 agreement with Sarah." We note that aside from certain modifications relevant to the purchase from Sarah, and a different set of signatures, most of the provisions of the 2011 agreement with Sarah are the same as the provisions of the 2010 agreement. The 2011 agreement includes a waiver provision, stating in part:

> Sellers, and each of them, by acceptance of this agreement and receipt of the purchase price specified herein, hereby completely waive and release any party, person, corporate officer, corporation, trust, trustee or any other party for any claim against any such party to this agreement absolutely and completely for any claim that may exist now regarding the stock purchase agreement and any amendments thereto.

That section of the agreement also states, "The parties understand and contemplate that this agreement shall constitute the entire agreement between them, and that there are no other

- 3 -

agreements, verbal or written, that are relative to the purchase of their stock as outlined herein in Cottonwood Flats."

In his complaint in the present case, Kurt alleged that on August 31, 2011, Sarah (who was then deceased), "by and through her legal counsel," delivered a letter to Kurt seeking to sell her stock directly to Kurt. He alleged that Sarah's counsel proposed in the letter transferring Sarah's stock to Kurt "by means of a Small Estate Affidavit" and detailed how that could be accomplished through Jack "as the sole beneficiary of Sarah's estate." According to Kurt's complaint, he delivered a check for $72,373.58 to Sarah's counsel on October 14, 2011, "as full payment for 62.6 shares of stock owned outright by Sarah" and that Sarah's counsel then delivered the stock to Kurt.

(c) Judgment in Underlying Litigation

The original complaint in the underlying litigation involved claims arising out of a dispute among Kurt and his three surviving siblings with respect to interests in Cottonwood Flats, the stock purchase agreements described above, and other agreements. Kurt's siblings (the plaintiffs) filed suit against Kurt and Lillian in various capacities. Lillian died before trial, and the case against her was revived against Kurt as special administrator of her estate. Two of the plaintiffs died before entry of the final order in the underlying litigation and the case was revived in the names of their spouses as personal representatives. Sarah's heirs were not parties to the underlying litigation. The plaintiffs filed an amended complaint in 2014, both individually and derivatively on behalf of Cottonwood Flats. The plaintiffs' claims fell into two basic categories, those relating to the shareholder derivative action and those relating to administration of the trusts. Further details of the complex procedural history of the underlying litigation are set forth in *Hohenstein I*. For purposes of the appeal in this case, we note that following trial, the district court found certain agreements and transactions (including the 1994 agreement) invalid. We also note that in its January 2022 final order, the court determined that Kurt used Cottonwood Flats' assets rather than his own money to pay for 69.3% of the purchase price of Sarah's stock and ordered Kurt to transfer that percentage of the shares purchased directly from Sarah (43.4 shares) back to Cottonwood Flats. However, aside from determining that Kurt used corporate funds rather than his own for the purchase, the validity/enforceability of Kurt's 2011 agreement with Sarah, including the waiver provision, was not an issue addressed in the underlying litigation. Kurt appealed, and this court affirmed the district court's orders at issue in *Hohenstein I* in all respects with the exception of certain aspects of the attorney fees award, and we reversed and remanded with directions as to that aspect of the court's decision.

2. *HOHENSTEIN II*

The exhibits admitted at the hearing on the defendants' motion to dismiss Kurt's complaint in the present case included filings from the case addressed by this court in *Hohenstein II*. Specifically, the documents admitted were Kurt's complaint (naming the plaintiffs in the underlying litigation, the plaintiffs' attorneys, and the attorneys' law firms as defendants), motions to dismiss filed by the defendants in *Hohenstein II*, the district court's order ruling on the motions to dismiss, and a copy of this court's memorandum opinion following Kurt's appeal. Kurt's complaint in *Hohenstein II* included a claim that the defendants in that case wrongfully interfered

with his 2011 agreement with Sarah by including language in a proposed order in the underlying litigation requiring him to deliver some of the stock he purchased from Sarah to Cottonwood Flats. The defendants' motions to dismiss alleged that Kurt's complaint failed to state a claim upon which relief could be granted, that his claims were all related to issues fully litigated in *Hohenstein I*, and that his claims were barred due to claim/issue preclusion. The court granted the motions to dismiss. Kurt appealed, and this court affirmed. See *Hohenstein II*.

### 3. INJUNCTION CASE

The exhibits admitted in the present case included filings from a case we refer to as "the injunction case," a case concerning Kurt's actions after the underlying litigation. We summarize that evidence as follows.

On October 31, 2023, Vicki Hohenstein (Vicki) and Jill Hohenstein (Jill), as personal representatives of their late husbands' estates, and William N. Hohenstein II (William II), individually and derivatively on behalf of Cottonwood Flats (collectively "the plaintiffs"), filed a complaint against Kurt, Cottonwood Flats, Christine Vidal (Vidal), formerly known as Christine Fulford, and Catherine Mertes (Mertes). Jill and Vicki are the spouses of Kurt's two siblings who died after initiation of the underlying litigation but before entry of the final order at issue in *Hohenstein I*. Vidal and Mertes are Sarah's heirs. The plaintiffs included Vidal and Mertes as defendants to the extent they were deemed necessary parties because Vidal and Mertes had not consented to be named as plaintiffs. The plaintiffs alleged that Kurt had continued to engage in self-dealing transactions as a director of Cottonwood Flats. They sought Kurt's removal as director and the appointment of a custodian for Cottonwood Flats, his removal as successor trustee of the Family Trust and the appointment of a new successor trustee, and temporary injunctive relief as to Cottonwood Flats and the Family Trust. On November 1, the district court granted the plaintiffs' request for a temporary injunction. The court enjoined Kurt from taking any action as a director or otherwise on behalf of Cottonwood Flats and enjoined him from taking any action as trustee of the Family Trust. The court also appointed Farmers National Company as temporary custodian of Cottonwood Flats; appointed Vicki, Jill, and William II as special fiduciaries of the Family Trust; and ordered Kurt to deliver certain records of Cottonwood Flats, or make them available, to Farmers National.

Kurt filed a pleading entitled "OBJECTION OF DEFENDANT TO POST APPEAL MOTIONS AND COUNTERCLAIM AND CROSS CLAIM." The plaintiffs then filed a motion seeking to modify certain provisions of the temporary injunction, to strike Kurt's pleading, and to impose sanctions. The plaintiffs asked the court to strike Kurt's objection, noting that it was not a proper pleading in which to assert a counterclaim or cross-claim. They also asked the court to impose a filing sanction on Kurt for his "continued frivolous and bad faith filings."

On February 7, 2024, the district court entered an order ruling on the plaintiffs' motion. The court made certain modifications to the temporary injunctive relief previously ordered. It also struck Kurt's pleading in which he asserted the counterclaim and cross-claim and gave him leave to file an answer. The court declined to impose any restrictions on Kurt's future court filings, finding that such a remedy was not warranted at that time.

On February 22, 2024, Kurt filed an answer, counterclaim, and cross-claim. We do not recite the details of Kurt's pleading except to note that he asserted a claim alleging his right

pursuant to his 2011 agreement with Sarah to purchase Cottonwood Flats stock in the Family Trust in which Sarah's heirs had an interest and asserted a claim for repayment of money loaned by Kurt, individually, and/or by Lillian's Trust to the Family Trust.

On March 25, 2024, the plaintiffs filed a motion to realign the parties, making Vidal and Mertes plaintiffs, and to dismiss Kurt's counterclaim and cross-claim with prejudice for failure to state claims upon which relief could be granted.

On April 26, 2024, the district court entered an order granting the motion to realign the parties to make Vidal and Mertes plaintiffs. The court also granted the request to dismiss Kurt's counterclaim and cross-claim. The court did not specify in its order whether the dismissal was with or without prejudice, simply stating that the motion to dismiss the counterclaim and cross-claim was "GRANTED."

The plaintiffs filed an amended complaint reflecting the realignment on May 17, 2024. The plaintiffs sought continuation of the prior temporary injunctive relief, the right to seek future temporary injunctive relief, if necessary, permanent injunctive relief, and such other relief as may be appropriate.

Kurt filed a motion seeking to alter or amend the order dismissing his counterclaim and cross-claim. He also filed a motion seeking to dismiss the amended complaint, noting that Cottonwood Flats had not been served within 180 days of commencement of the action and was no longer a party. He alleged that Cottonwood Flats and the Family Trust (and the trust's successor trustee) were indispensable parties to the injunction case and that the amended complaint should be dismissed.

The district court entered an order ruling on Kurt's motions on July 9, 2024. The court granted Kurt's motion to dismiss Cottonwood Flats as a defendant for lack of service, but it disagreed with Kurt's assertion that Cottonwood Flats was an indispensable party necessitating dismissal of the amended complaint in its entirety. The court found that the injunction case could continue as to Kurt, the remaining defendant. The court did not specifically address Kurt's allegation that the Family Trust was an indispensable party. The court denied Kurt's motion to alter or amend the dismissal of his counterclaim and cross-claim, stating that it had "reviewed the pleadings, the evidence presented, along with the argument of the parties and the record that has been made in these proceedings," and that it "cannot come to any other conclusion [than] that the counterclaims [sic] of [Kurt] should be dismissed for failure to state a claim for which relief can be granted."

There is nothing in our record in the appeal of the current case to indicate the present status of the injunction case, although we note that a premature appeal by Kurt in the injunction case was dismissed for lack of jurisdiction on September 4, 2024. See *Hohenstein v. Hohenstein*, 33 Neb. App. viii (A-24-544, Sept. 4, 2024).

### 4. TRUST DEBT CASE

The exhibits admitted in the present case also included filings from a case we refer to as the "trust debt case," a case concerning the debt allegedly owed by the Family Trust to Lillian's Trust. Our record includes the complaint, a motion to dismiss, and an order ruling on the motion to dismiss in the trust debt case.

The complaint in the trust debt case was filed in the Dakota County District Court on December 5, 2023, by "WILLIAM AND LILLIAN HOHENSTEIN TRUST, KURT HOHENSTEIN, SUCCESSOR TRUSTEE" as plaintiff against "HOHENSTEIN FAMILY TRUST AND VICKI HOHENSTEIN AND JILL HOHENSTEIN, SUCCESSOR TRUSTEES" as defendants. These are the trusts referred to above and in other opinions from this court as Lillian's Trust and the Family Trust. The complaint stated that the trust documents of both trusts included the right to borrow and lend money and that on numerous occasions from November 2013 to the date of the complaint, Lillian's Trust loaned money to the Family Trust at the request of the Family Trust. The complaint further stated that to date, none of the funds loaned to the Family Trust had been repaid. The complaint set forth a claim for breach of contract, stating that the plaintiff had loaned the Family Trust a total of $424,500 (with terms of no interest, but payable upon demand), that the plaintiff made demand for payment on October 1, 2023, but that none of the funds were paid pursuant to that demand. The complaint sought judgement of $425,500 plus prejudgment and postjudgment interest. The complaint also set forth a claim for injunctive relief, stating that the Family Trust might not have sufficient funds to repay the loan or might attempt to distribute the trust's assets "to beneficiaries or other parties . . . to avoid the payment of any judgment entered" in the trust debt case. The complaint sought injunctive relief to prevent any such depletion of the Family Trust assets. The complaint was signed by "Kurt Hohenstein, Successor Trustee, Plaintiff, Pro Se."

The Family Trust and Vicki and Jill as its successor trustees filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6) (codified in 2008), alleging that Kurt, "a disbarred lawyer," could not represent Lillian's Trust. They also sought sanctions under Neb. Rev. Stat. § 25-824 et seq. (Reissue 2016).

On February 7, 2024, the district court entered an order granting the motion to dismiss Kurt's complaint in the trust debt case and awarding sanctions. The court reviewed Nebraska case law and observed that a trust or corporate entity must be represented by an attorney and cannot act pro se and that any filings by a nonattorney on behalf of a trust are deemed a nullity. The court stated that Kurt's subsequent filings "do not and cannot, correct the issue," and concluded that the case must be dismissed. Because Kurt had previously acknowledged the rule barring him from acting pro se on behalf of a trust in "other related proceedings" before the court, it found his complaint frivolous and/or made in bad faith and sanctioned Kurt, awarding attorney fees of $2,620 to the defendants in that case. The court dismissed Kurt's complaint with prejudice, and it also denied and struck certain other filings Kurt made in that case as improper.

5. CURRENT CASE

(a) Complaint

On July 17, 2024, Kurt filed a complaint in the district court for Lancaster County, naming Vidal and Mertes, individually and as beneficiaries of the Family Trust, and Jill and Vicki, individually and as co-trustees of the Family Trust, as defendants. We have referred to Vidal, Mertes, Jill, and Vicki collectively as "the defendants." Kurt's asserted claims are grounded in two sets of factual allegations. His claims in this case are similar to his claims in his counterclaim and cross-claim in the injunction case and his claim in the trust debt case.

- 7 -

In the present case, Kurt first sets forth the allegations concerning his 2011 purchase of Sarah's Cottonwood Flats stock as described above. Kurt then asserted that Vidal and Mertes, as Sarah's heirs, are qualified beneficiaries of the Family Trust, have rights to Sarah's share of Family Trust property, and are bound by agreements made by Sarah or her representatives. Kurt alleged that in 2023, he notified Vicki and Jill that he wished to exercise his right to buy the Cottonwood Flats stock in the trust "in which Sarah's heirs had an interest," which Kurt calculated to be 59.2 shares for a total price of $80,812.69, and he demanded that the Family Trust deliver the 59.2 shares to him upon payment of that amount to the court. He alleged that, "despite stating [at that time] that the documents executed in 2011 and [his] delivering in full the funds agreed on [in 2011] were complete and legally sufficient to transfer the interest sold by Sarah to [Kurt]," the defendants responded in 2023 by asserting these documents "were ineffective." He alleged that he was damaged by his reliance on the prior representations made by the defendants and their predecessors in interest.

Kurt also set forth allegations concerning the debt allegedly owed by the Family Trust to Lillian's Trust and/or Kurt. Specifically, he alleged that the Family Trust incurred debt in defending against the allegations in several other proceedings, that the Family Trust then borrowed money from Lillian's Trust, of which Kurt is the sole beneficiary, and that the debt incurred by the Family Trust is "a valid debt owed to the sole beneficiary of said trust and has not been paid." Kurt asserted that from 2013 to the date of his complaint, he loaned money to the Family Trust, individually or while acting as successor trustee of Lilian's Trust, totaling $424,500, without interest, but payable upon demand. He alleged that he made demand on Vicki and Jill as special fiduciaries on October 1, 2023, for payment of the loaned funds, but that no repayment had been made.

Kurt asserted claims for breach of contract (against Vidal and Mertes), tortious interference with a contract (against all defendants), two claims of fraud/constructive fraud (against all defendants), breach of the Nebraska Voidable Transactions Act (against Jill and Vicki), and he sought injunctive or declaratory relief. Kurt sought judgment against the defendants "for such damages as may be determined, including an order requiring the sale of the stock of the [d]efendants in the [Family Trust] as is necessary to complete the valid contracts set out herein." Kurt also sought "an order and judgment against [Vicki and Jill] and the [Family Trust] for the amount of funds loaned by [Lillian's Trust] and/or [Kurt] as sole beneficiary," prejudgment and post judgment interest, and the "return of such stock transferred by the [Family Trust] in violation of the Nebraska Voidable Transaction Act for use in payment of such debts set out herein." Kurt asked that the defendants be found jointly and severally liable for damages, and he sought an award of attorney fees and costs.

On August 22, 2024, the defendants filed a motion to transfer the current case to Dakota County where the underlying litigation and other related cases have been heard. The Lancaster County District Court granted the motion to transfer on September 20.

(b) Motion to Disqualify

On November 17, 2024, Kurt filed a motion seeking to disqualify the Dakota County District Court judge from hearing this case. In general, Kurt alleged that the judge, since being appointed as the successor to the trial judge in the underlying litigation, "over the course of several

proceedings," had demonstrated bias against Kurt and in favor of the parties opposing Kurt in those proceedings and that this bias was "reflected in a pattern of rulings, decisions, and orders that taken together demonstrate that the judge's impartiality might reasonably be questioned."

The district court heard Kurt's motion to disqualify on December 17, 2024. The court received exhibit 8 offered by Kurt, a copy of his affidavit in support of the motion. It took judicial notice of the exhibits A-J attached to Kurt's affidavit. The attachments to Kurt's affidavit were not included in the bill of exceptions with exhibit 8. Kurt's affidavit and attachment A appear in the transcript on appeal, but attachments B-J do not. The court also received exhibits 1-7 offered by the defendants, which consist of various filings in the injunction case. After hearing arguments by the parties, the court took the motion to disqualify under advisement.

On January 13, 2025, the district court entered an order ruling on Kurt's motion to disqualify. The court denied Kurt's motion, stating:

[Kurt] asks that this [c]ourt disqualify itself from the [current] case, stating that the [c]ourt is reflexively supportive of positions and arguments of the defendants. It should be noted that the dispute between these parties involve[s] a multitude of actions (at least 10) filed in Dakota County District Court going back over a decade (2013), but generally can be traced to a single set of facts involving a family farm corporation. [Kurt] has generally been on the losing side of these matters (both as plaintiff and defendant) going back over these cases that now involve several district court judges. The rulings of the district judges of the Dakota County District Court have generally survived on appeal, including the decisions of [the judge in the current case]. As stated in *State v. Buttercase*, [296 Neb. 304, 893 N.W.2d 430 (2017), *abrogated on other grounds*, *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023),] 'Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion directed to a trial judge.'

In the matters involving these litigants the [c]ourt has endeavored to give all parties a fair hearing but has also tried to make consistent rulings supported by the facts and the law. In applying the standard outlined by the Nebraska Supreme Court, this [c]ourt does not believe a reasonable person would find bias or prejudice against [Kurt] by the [t]rial [j]udge.


(c) Motion to Dismiss and for Sanctions

On October 4, 2024, the defendants filed a motion to dismiss Kurt's complaint under § 6-1112(b)(6) for failure to state a claim upon which relief can be granted. The defendants noted certain related litigation, including the dismissal of Kurt's counterclaim and cross claim in the injunction case, and alleged that Kurt's claims in this case were barred due to claim preclusion and/or issue preclusion. The defendants also noted the claims in Kurt's complaint asserted on behalf of Lillian's Trust and asserted that the complaint was "a legal nullity" with respect to those claims as Kurt was engaged in the unauthorized practice of law. Finally, the defendants asserted that Kurt's complaint was frivolous and made in bad faith. They sought sanctions, including attorney fees and costs pursuant to § 25-824 et seq., and they requested certain limitations on Kurt's future filings due to his "continued frivolous and bad faith filings." Kurt filed an objection to the motion to dismiss and for sanctions on November 15.

The defendants' motion to dismiss and for sanctions and Kurt's objection were heard by the district court on March 4, 2025. The court received exhibits 9-44, which contained filings from *Hohenstein I*, *Hohenstein II*, the injunction case, and the trust debt case as described above. The court then heard arguments from the parties and took the matter under advisement.

On March 31, 2025, the district court entered an order ruling on the defendants' motion to dismiss and for sanctions. The court noted that the defendants relied on claim/issue preclusion in support of their motion to dismiss. It reviewed case law concerning those doctrines and then stated:

As noted in the defendants' [m]otion to [d]ismiss and evidenced by the received exhibits, these parties are involved in a 'years-long, multi-case legal battle,' which goes back to the original [underlying litigation]. . . . There have also been several other cases stemming from the same basic facts. . . . A review of the complaint in this matter reveals that the same family members are involved, and the allegations all seem to stem from the same basic family conflict. The [c]ourt has found that the basic elements of this matter have been litigated and appealed multiple times. Based on the doctrine of claim preclusion, this [m]otion to [d]ismiss is GRANTED.

With respect to the motion for sanctions, the district court stated:

Defendants in this matter ask that [Kurt] here be further sanctioned and found to be a vexatious litigant. Defendants have asked for this relief in prior actions, and the [c]ourt has resisted that request. But now it is clear that something needs to be done to try to bring this matter to an end. Until further [o]rder of this [c]ourt, [Kurt] is barred from filing any new complaint, counterclaim, crossclaim, third-party claim, or other pleading seeking affirmative relief related to Cottonwood Flats, Inc., or any of the parties to this action, without first submitting any proposed filing to this [c]ourt. In the alternative, [Kurt] may retain legal counsel licensed to practice law in the state of Nebraska, to seek recourse.

In its March 2025 order, the district court also stated that all other pending motions before the court were deemed moot.

### (d) Motion to Alter or Amend

On April 10, 2025, Kurt filed a motion to alter or amend the March 2025 order (noting that his motion was filed after submission to the district court pursuant to the March 2025 order).

Following a hearing on Kurt's motion to alter or amend, the district court entered an order on June 2, 2025, granting Kurt's motion in part. The court amended the March 2025 order to state that the current case was "DISMISSED WITH PREJUDICE." The court amended its ruling on the defendants' request for sanctions to state that Kurt "has been found to be a vexatious litigant, and is barred from filing any new complaint, crossclaim, or third party claim seeking affirmative relief related to Cottonwood Flats, Inc., or any other party listed in this action," thus eliminating the requirement that Kurt submit proposed filings to the court. The court further amended its sanctions ruling to state that Kurt "may seek relief in this [c]ourt by either retaining counsel who is licensed to practice law in the State of Nebraska, or by representing, under oath, to the [c]ourt in any future *pro se* pleading that said pleading has been reviewed by an attorney licensed to practice law in the [S]tate of Nebraska for compliance with [Neb. Ct. R. of Prof. Cond.] § 3-503.1 . . . regarding

[m]eritorious [c]laims and [c]ontentions." The court also entered an amended order ruling on the defendants' motion to dismiss and for sanctions, which included the noted changes.

## III. ASSIGNMENTS OF ERROR

Kurt assigns, restated and reordered, that the district court erred in (1) denying his motion to disqualify the judge, (2) dismissing his complaint for failure to state a claim based on its findings of claim or issue preclusion, (3) dismissing his complaint with prejudice, and (4) sanctioning him as a vexatious litigant.

## IV. STANDARD OF REVIEW

A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023).

A district court's grant of a motion to dismiss for failure to state a claim under § 6-1112(b)(6) is reviewed de novo, accepting all the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Ramaekers v. Creighton University*, 320 Neb. 478, 28 N.W.3d 57 (2025).

The applicability of claim and issue preclusion is a question of law. *Benda v. Sole*, 319 Neb. 745, 25 N.W.3d 68 (2025). On a question of law, an appellate court reaches a conclusion independent of the court below. *Id.*

The standard of review of a trial court's determination of a request for sanctions is whether the trial court abused its discretion. *Barnett v. Happy Cab Co.*, 311 Neb. 464, 973 N.W.2d 183 (2022). See, also, *State ex rel. Tyler v. Douglas Cty. Dist. Ct.*, 254 Neb. 852, 580 N.W.2d 95 (1998) (finding imposition of filing restrictions for frivolous or malicious litigation was within district court's discretion).

## V. ANALYSIS

### 1. MOTION TO DISQUALIFY

Kurt assigns that the district court erred in denying his motion to disqualify the judge.

To demonstrate that a trial judge should have recused himself or herself, the moving party must show that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown. *Timothy L. Ashford, PC LLO v. Roses*, 313 Neb. 302, 984 N.W.2d 596 (2023). A party alleging that a judge acted with bias or prejudice bears a heavy burden of overcoming the presumption of judicial impartiality. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020).

"'[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion' directed to a trial judge." *Id.* at 293, 948 N.W.2d at 783-84 (2020) (quoting *Huber v. Rohrig*, 280 Neb. 868, 791 N.W.2d 590 (2010)). Nor can a judge's ordinary efforts at courtroom administration be a basis for bias or partiality. *Tilson v. Tilson, supra*. Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings,

or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Id.*

Kurt argues that the judge in this case and other related cases has made rulings reflexively supportive of the parties' opposing Kurt. However, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion directed to a trial judge. See *id*. Many of the allegations of bias that Kurt has made below and on appeal arise from hearings in other cases addressed by this court in prior appeals. The evidence offered by Kurt in support of his motion to disqualify does not demonstrate that the trial judge has displayed a deep-seated favoritism or antagonism that would make fair judgment impossible. In this case, both the motion to disqualify and the motion to dismiss were set to be heard together. The judge proceeded only on the motion to disqualify, took that matter under advisement, and issued a thoughtful decision on that issue before proceeding with a rescheduled hearing on the motion to dismiss. Kurt has not demonstrated that a reasonable person who knew of the circumstances would question the judge's impartiality. See *Timothy L. Ashford, PC LLO v. Roses, supra*. We conclude that the district court judge did not abuse his discretion when he denied the motion to disqualify.

2. MOTION TO DISMISS FOR FAILURE TO STATE CLAIM

Kurt assigns that the district court erred in dismissing his complaint for failure to state a claim based on its findings of claim or issue preclusion. We first set forth general principles of law regarding claim preclusion and issue preclusion before applying those propositions to Kurt's claims in the present case.

(a) Claim Preclusion and Issue Preclusion

The district court relied on the doctrine of claim preclusion in dismissing Kurt's complaint in this case. Claim preclusion bars the relitigation of a claim that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. *Saylor v. State*, 315 Neb. 285, 995 N.W.2d 192 (2023). The doctrine bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action. *Id.*

The doctrine of claim preclusion rests on the necessity to terminate litigation and on the belief that a person should not be vexed twice for the same cause. *Id.* Whether the subsequent suit alleges the same cause of action as the prior suit is determined by whether the right to be vindicated rests upon the same operative facts; if so, the same cause of action has been alleged, even if different theories of recovery are relied upon. *Id.* Claim preclusion is an affirmative defense which must ordinarily be pleaded to be available. *Id.*

In their motion to dismiss, the defendants also alleged that Kurt's complaint was barred by issue preclusion. Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate. *Benda v. Sole*, 319 Neb. 745, 25 N.W.3d 68 (2025). Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an

- 12 -

opportunity to fully and fairly litigate the issue in the prior action. *Id.* Issue preclusion applies only to issues actually litigated. *Id.*

With these principles in mind, we turn to the question of whether the district court erred in applying claim preclusion to dismiss Kurt's complaint in this case.

### (b) Kurt's Claims About Agreement With Sarah

Although the district court in the underlying litigation voided certain agreements, the validity and enforceability of Kurt's agreement with Sarah and the effect of the waiver provision in particular was not addressed in the underlying litigation. Also, the alleged breach of that agreement had not occurred at time of trial in 2017, as Kurt did not make a demand to purchase the shares of Cottonwood Flats stock in the Family Trust in which Sarah's heirs had an interest until 2023. This claim was not directly addressed, necessarily included, or finally determined in either the underlying litigation or the litigation at issue in *Hohenstein II* (final order entered in 2022).

In his counterclaim and cross-claim in the injunction case, Kurt asserted claims alleging his right pursuant to his 2011 agreement with Sarah to purchase Cottonwood Flats stock in the Family Trust in which Sarah's heirs had an interest. Sarah's heirs were parties in that case, first as defendants and then as plaintiffs after the realignment. In their motion seeking realignment of the parties, the original plaintiffs in the injunction case also asserted that Kurt's counterclaim and cross-claim failed to state a claim upon which relief could be granted. They asked the court to dismiss the counterclaim and cross-claim with prejudice. The court granted the motion to dismiss in April 2024, but it did not specifically state whether it was dismissing the counterclaim and cross-claim with prejudice. After the party realignment, the plaintiffs (now including Vidal and Mertes) filed an amended complaint. Kurt filed motions seeking to alter or amend the dismissal of the counterclaim and cross-claim and also sought to dismiss the plaintiffs' amended complaint. In ruling on Kurt's motions, the court dismissed Cottonwood Flats as a defendant for lack of service, but otherwise allowed the amended complaint to proceed, and it denied Kurt's motion to alter or amend.

In the present case, the district court dismissed Kurt's complaint with prejudice for failure to state a claim on the basis of claim preclusion. A dismissal based on a failure to state a cause of action is a judgment on the merits. *Bohling v. Tecumseh Poultry*, 314 Neb. 129, 988 N.W.2d 529 (2023). Additionally, as a general rule, a dismissal with prejudice is an adjudication on the merits. *Id.* If a court enters an order that is final as to some—but not all—of the claims, the order is appealable only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. *Id.* Without such an entry of judgment, an order adjudicating fewer than all claims is not final and is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. *Id.*

Although Kurt's claim with respect to the alleged breach of his 2011 agreement with Sarah was raised in his counterclaim and cross-claim in the injunction case, the district court allowed the underlying amended complaint in the injunction case to continue. Accordingly, the court's April 2024 order granting the party realignment and dismissing Kurt's counterclaim and cross-claim in the injunction case was interlocutory. If a court enters an order that is final as to some—but not all—of the claims, the order is appealable only upon an express determination that there is no just

reason for delay and upon an express direction for the entry of judgment. Without such an entry of judgment, an order adjudicating fewer than all claims is not final and is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. *Bohling v. Tecumseh Poultry, supra*. There was nothing in the court's April 2024 order dismissing Kurt's counterclaim and cross-claim or in its July 2024 order denying his motion to alter or amend expressly directing judgment under Neb. Rev. Stat. § 25-1315 (Reissue 2016). (We do not comment here on whether it would have been proper for the court to do so). Thus, Kurt could not appeal the dismissal of his counterclaim and cross-claim in the injunction case until the court disposed of all claims. As noted above, this court has already dismissed a premature appeal by Kurt in that case for lack of jurisdiction.

Because there was no evidence before the district court in the present case to show that the dismissal of Kurt's counterclaim and cross-claim in the injunction case with respect to his claims about the 2011 agreement with Sarah was a final judgment on the merits, the court erred in dismissing Kurt's complaint as to those claims in the present case based on its finding of claim preclusion. A dismissal based on issue preclusion would also have been improper.

### (c) Kurt's Claims About Trust Debt

Kurt, as the successor of Lillian's Trust, filed the trust debt case pro se on behalf of Lillian's Trust, alleging a claim for repayment of the debt allegedly owed by the Family Trust to Lillian's. The trust debt case was dismissed with prejudice on February 7, 2024, because Kurt is not a licensed attorney and thus not able to represent Lillian's Trust.

In the present case, Kurt has alleged that both he, individually, and Lillian's Trust loaned money to the Family Trust. To the extent that Kurt is again trying to bring a claim on behalf of Lillian's Trust, the district court's dismissal in the present case was proper. Kurt is still not a licensed attorney and may not represent Lillian's Trust pro se, and we are not convinced by his assertions that as sole beneficiary of Lillian's Trust, the debt owed to Lillian's Trust is a debt owed to him. See *Back Acres Pure Trust v. Fahnlander*, 233 Neb. 28, 443 N.W.2d 604 (1989) (holding that trustees of trust were engaged in unauthorized practice of law when they filed complaints pro se on behalf of trust). Kurt also alleges at various points in his complaint in the current case that he loaned money to the Family Trust individually. His claim for repayment of any money loaned individually to the Family Trust was not a claim directly addressed or necessarily included in adjudication of the cases at issue in *Hohenstein I* and *Hohenstein II*, and given that this debt allegedly arose for the loan of money to the Family Trust for its defense in various actions, we do not see this claim as a matter which might have been litigated in either *Hohenstein I* or *Hohenstein II*. Kurt's claim that he loaned money individually to the Family Trust was raised in his counterclaim and cross-claim in the injunction case. And as discussed above, there was nothing before the district court in the present case to show that the injunction case has resulted in a final judgment on the merits. Accordingly, a dismissal on the basis of claim or issue preclusion of Kurt's complaint in the present case with respect to his claim of a debt owed by the Family Trust to Kurt for money Kurt loaned individually to the trust was not proper.

### 3. DISMISSAL WITH PREJUDICE

Kurt assigns that the district court erred in dismissing his complaint with prejudice.

A dismissal with prejudice operates as a rejection of the plaintiff's claims on the merits, and claim preclusion bars further litigation. *Saint James Apt. Partners v. Universal Surety Co.*, 316 Neb. 419, 5 N.W.3d 179 (2024). A dismissal without prejudice means that another petition may be filed against the same parties upon the same facts as long as it is filed within the applicable statute of limitations. *Id.*

Given our resolution of Kurt's previous assignment of error, we need not address this assignment of error further. An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it. *Continental Indem. Co. v. Starr Indem. & Liab. Co.*, 320 Neb. 574, 28 N.W.3d 843 (2025).

### 4. MOTION FOR SANCTIONS

Kurt assigns that the district court erred in sanctioning him as a vexatious litigant. We find no abuse of discretion in the sanction imposed.

In ruling on the defendants' motion to dismiss and for sanctions, the district court found Kurt to be a vexatious litigant and imposed a filing sanction. The court initially barred Kurt from making new filings without first submitting proposed filings to the court. It also stated that Kurt could retain an attorney licensed to practice law in Nebraska to seek recourse. The court later modified the sanction in its ruling on Kurt's motion to alter or amend. In the June 2025 order on Kurt's motion to alter or amend, the court stated that its intent in imposing a filing sanction "was to encourage licensed attorney review of any new filing to ensure that the filing is appropriate under the Nebraska Rules of Ethics" and not "to assume the role of gatekeeper for every filing that [Kurt] seeks to file," which the court did not think would be "appropriate." The court amended its prior ruling accordingly. The court also entered an amended order, in which the court stated that Kurt had been found to be a vexatious litigant and was barred from filing "any new complaint, crossclaim, or third party-claim seeking affirmative relief related to Cottonwood Flats . . . or any other party listed in this action" and that he could seek relief by either retaining counsel licensed to practice law in Nebraska or by representing, under oath, to the court in any future pro se pleading that the pleading had been reviewed by a licensed Nebraska attorney for compliance with § 3-503.1.

It is the court's duty to prevent frivolous proceedings in the administration of justice. *Cole v. Blum*, 262 Neb. 1058, 637 N.W.2d 606 (2002); *State ex rel. Tyler v. Douglas Cty. Dist. Ct.*, 254 Neb. 852, 580 N.W.2d 95 (1998). While there is a generally recognized constitutional right of access to the courts, courts can place restrictions on such access in order to prevent the abuse of the judicial process, to avoid unnecessary delay in the prosecution of actions, and to guard against actions that are frivolous or malicious. *State ex rel. Tyler v. Douglas Cty. Dist. Ct., supra*. The State's interest in not allowing frivolous or malicious litigation in its courts is constitutionally paramount to a plaintiff's desire to pursue such litigation. *Id.*

A party litigant who brings successive lawsuits involving the same issues against the same parties, which are vexatious in nature, may be enjoined from continuing such action. *Nuttelman v. Julch*, 228 Neb. 750, 424 N.W.2d 333 (1988). Given the sprawling and repetitive nature of the litigation in this years-long family dispute spanning many cases, we find no abuse of discretion in the filing sanction imposed by the district court.

## VI. CONCLUSION

The district court did not abuse its discretion in denying Kurt's motion to disqualify the judge or in sanctioning Kurt as a vexatious litigant. We affirm the dismissal of Kurt's complaint to the extent he brought claims on behalf of Lillian's Trust. As to the dismissal of Kurt's complaint with respect to his claims concerning an alleged breach of the 2011 agreement with Sarah and any claims for a debt owed by the Family Trust to Kurt for money Kurt individually loaned to the Family Trust, we reverse the dismissal and remand the cause for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.